# Mill Creek Coal Company, Appellant, *v.* Curran.

*Mines and mining—Boundary pillars—Width of pillars—Act of June 2, 1891, P. L. 176, Art. III, Sec. 10—Awards—Validity—Equity—Bill in equity—Demurrer.*

1. The legislature has the power to provide a method of determining the width of the barrier pillar between two adjacent mines.

2. The authority conferred on the tribunal created by Sec. 10,

Art. III, of the Act of June 2, 1891, P. L. 176, to fix the width of the barrier pillar between two adjacent mines, necessarily includes the authority to determine whether the safety of the employees in the mine requires a pillar of any width, and when the width of a pillar has been fixed, it will be presumed that the necessity for a pillar has been considered.

3. A majority of the members of the tribunal created by the Act of June 2, 1891, P. L. 176, may render a valid decision, provided that all the members have an opportunity to participate in determining the question for decision.

4. The Act of June 2, 1891, P. L. 176, does. not require that the board which fixes the width of the barrier pillar shall report its findings to the department of mines, or that all the members of the board shall sign the report; and the refusal of one member to sign the report of the board does not affect its validity.

5. Where a bill in equity to have declared invalid an award fixing the width of a barrier pillar of coal between two adjacent mines, and made in pursuance of the Act of June 2, 1891, Art. III, Sec. 10, complained that the award was defective because the necessity for a pillar was not considered, that no pillar was in fact necessary, that one of the members of the board did not participate in its deliberation or decision, and that the report of the board was not signed by all its members, the court made no error in sustaining a demurrer to the bill where it appeared from the proceedings of the board, which were made a part of the bill, that the width of the pillar had been determined by a majority vote in a regular proceeding at a meeting at which all the members were present.

Argued Feb. 16, 1914. Appeal, No. 215, Jan. T., 1913, by plaintiffs, from decree of C. P. Schuylkill Co., Nov. T., 1912, No. 4, sustaining demurrer to bill in equity for an injunction in case of The Mill Creek Coal Company and Warren Delano and Frederick A. Delano, Trustees under the last Will and Testatment of Warren Delano, Deceased, and under the last Will and Testament of James S. Cox, Deceased, v. John Curran, Mine Inspector of the 18th Anthracite District; William A. McGinley, Engineer for the Dodson Coal Company; Thomas Kelshaw, Engineer for the Mill Creek Coal Company, and the Dodson Coal Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity to declare illegal an award fixing the width of a barrier pillar of coal between the mines of two operating companies.   Before BECHTEL, P. J.

The facts are stated in the opinion of the Supreme Court and in Curran v. Delano, 235 Pa. 478.

The defendants demurred to the bill. The court sustained the demurrer and dismissed the bill. Plaintiffs appealed.

*Error assigned* was the decree of the court.

*C. E. Berger,* with him *Otto E. Farquhar,* for appellants.

*W. K. Woodbury,* of *Woodbury & Woodbury,* with him *John F. Whalen,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 23, 1914:

The parties to this litigation were before this court in Curran v. Delano, 235 Pa. 478, and the facts out of which the present suit arose will be found in the report of that case. That was a bill filed by Curran, as mine inspector, to enjoin the owners of the coal from reducing the width of a barrier pillar between the adjacent mines operated by the Mill Creek Coal Company and the Dodson Coal Company. We held that the proceeding was in effect a bill to determine the width of the barrier pillar between the adjacent coal owners and that it would not lie, as the legislature had conferred jurisdiction in such cases on a special tribunal by Section 10, Article III, of the Act of June 2, 1891, P. L. 176. We did not dismiss the bill but directed it to be retained until the width of the boundary pillar was determined as required by the Act of 1891.

The present bill was filed subsequently by the owners of the coal and the Mill Creek Coal Company, their lessee, against the mine inspector, the engineer of the Dodson Coal Company, a lessee of the same owners, the engi-

neer of the Mill Creek Coal Company, and the Dodson Coal Company to have declared illegal and void an award made in pursuance of the Act of 1891 and signed by the inspector and the engineer of the Dodson Coal Company, fixing the width of the barrier pillar between the coal of the two operating companies. The bill after reciting the letting of the coal to the two coal companies, the mining of the coal by those companies, and the proceedings in the court below and in this court on the former bill, averred that proceedings to determine the width of the barrier pillar between the adjacent mines had been taken before the mine inspector and the engineers of the two operating companies, and that an award had been filed in the department of mines at Harrisburg by the mine inspector and the engineer of the Dodson Coal Company fixing the width of the pillar at three hundred feet between the two collieries. The bill then alleged that the award was illegal because there was no necessity for a barrier pillar; that the board convened by the mine inspector refused to consider the question of the necessity for a pillar; and that the engineer of the Mill Creek Coal Company was not a party to the award, did not take part in making it, that he did not sign it, and that he had no knowledge of it until it was presented to him for his signature. The Dodson Coal Company and its engineer, two of the defendants, demurred, and the demurrer was sustained by the court below on the ground that it had no jurisdiction of the subject matter of the bill. The plaintiffs have taken this appeal.

We do not deem it necessary to pass upon the question of the jurisdiction of a court of equity to determine the issues raised by the bill, as we are of opinion that if the court had jurisdiction it was fully warranted under the facts in dismissing the bill. Section 10, of Article III, of the Act of June 2, 1891, creates a tribunal for determining the width of a barrier pillar between two adjacent coal properties. After providing that the owners of the coal shall leave a pillar between their properties

of such width as will be a sufficient barrier for the safety of the employees of either mine in case the other should be abandoned and allowed to fill with water requires "such width of pillar to be determined by the engineers of the adjoining property owners, together with the inspector of the district in which the mine is situated, and the surveys of the face of the workings along such pillar shall be made in duplicate and must practically agree. A copy of such duplicate surveys, certified to, must be filed with the owners of the adjoining properties and with the inspector of the district in which the mine or property is situated." The averments of the bill show that the proceedings taken by the mine inspector and the two engineers were in strict accordance with the Act of 1891. The inspector gave written notice to the owners of the coal and the two operating companies that there would be a meeting at his office on July 10, 1912, for the purpose of determining what width of pillar should be allowed to remain between the two mines. On the day named the inspector and the engineers of the two companies together with representatives of the companies and the owners of the coal met at the office of the inspector. The engineers presented maps showing the face of the workings of their respective mines along the line of the barrier pillar. The Mill Creek map showed that the coal on that side of the line had been mined up to the land line, while the Dodson map showed that the coal on the other side had been mined up to within three hundred feet of the land line. The tribunal agreed that whatever pillar was to be left must be composed entirely of the coal on the Dodson side of the line. After considerable discussion by the parties present, "McGinley (the engineer of the Dodson Coal Company) moved that the pillar remain intact as shown on the maps to-day. Motion seconded and carried, Curran and McGinley voting in the affirmative, and Kelshaw (the engineer of the Mill Creek Coal Company) voting in the negative." Certified copies of the maps showing the face of the workings

on the barrier pillar, as required by the Act of 1891, were filed with the owners of the property, and with the mine inspector.

The proceedings before the mine inspector and engineers appear by the report made by the inspector and the engineer of the Dodson Coal Company to the department of mines at Harrisburg. A copy of this report is attached to and made part of the bill filed by the plaintiffs. The bill does not deny the facts set out in the report of the inspector and engineer. The grounds for attacking the proceeding, averred in the bill, are without merit. It is alleged that there was no necessity for a pillar, that the engineer of the Mill Creek Coal Company did not sign the award and did not consult or deliberate with the others in making the award. It will be observed that the Act of 1891 requires the owners of the adjacent coal properties to leave a boundary pillar which will be "a sufficient barrier for the safety of the employees of either mine in case the other should be abandoned and allowed to fill with water." The necessity for a barrier pillar was manifestly considered and determined. The width of the pillar was fixed at three hundred feet, and it follows that the necessity for any pillar must have been considered by the inspector and engineers. The act does not provide that the tribunal created for the purpose of fixing the width of the pillar shall hear evidence and from that determine the question submitted for their adjudication. Nor does it deny the inspector and engineers the right to hear any testimony which they may think necessary to assist them in the performance of their duties, and it doubtless would not avoid their decision if they did call before them witnesses and hear their testimony. The legislative view, however, apparently was that as the two engineers, experts in their line, were familiar with the underground workings of their respective mines, and as the mine inspector was also fully informed as to the condition of both mines, they should determine the width of the pillar from their

own knowledge of the facts and experience in mining operations. It is not clear how a more competent tribunal to determine the question could have been created. At all events, the legislature had the power and authority to provide for determining the width of the pillar, and having done so, the courts must recognize the tribunal and enforce its findings. The authority to fix the width of the pillar necessarily includes the authority to determine whether the safety of the employees in the mine required a pillar of any width. If in the judgment of the inspector and engineers no pillar was needed, it would be idle, as suggested in Commonwealth v. Plymouth Coal Company, 232 Pa. 141, for them to fix the width of the pillar at, say, one foot, for the sake, merely, of literal compliance with the statutory obligation of leaving a pillar of some width. When, however, the tribunal fixes the width of the pillar, it will be presumed, what necessarily must be so, that they considered the necessity for any pillar to protect the employees engaged in the mines. In the present case, if the inspector and engineers declined to hear evidence on the question of the necessity of a barrier, it will be presumed that their own knowledge of the situation enabled them to determine the question without the assistance of testimony.

The allegation in the bill that Kelshaw, the engineer of the Mill Creek Coal Company, was not a party to the award and was not consulted and did not deliberate with the others in making it, is a conclusion of the pleader and not warranted by the facts as they appear in the bill. The bill avers that the meeting at the time fixed in the notices was called to order by the inspector who acted as chairman; that Kelshaw was elected secretary; that he participated in the discussions at the meeting and that by the award attached to and made part of the bill he voted on the motion to fix the width of the pillar. It is true that his vote was in the negative, but it shows that he participated in the deliberations of the tribunal when its members were properly convened

for the purpose of determining the question. The bill does not aver, and it is not alleged, that there was more than one meeting by the inspector and engineers for fixing the width of the pillar; on the contrary, as appears above, the meeting was held on the day fixed, the inspector and the two engineers were present and after discussion, fixed the width of the pillar. Kelshaw was, therefore not only consulted in making the award but took an active part in the proceedings and voted upon the question of fixing the award. An averment in the bill that Kelshaw had no notice of a meeting for the purpose of making a decision or award is likewise without merit. The width of the boundary line was fixed at the meeting called for the purpose at which Kelshaw was present. The statute required no further action on the part of the inspector and engineers except the filing with the owners of the properties and with the mine inspector certified copies of the maps showing the face of the workings of the barrier pillar which was done. The statute does not in terms require a formal report of the action taken by the inspector and the engineers other than the filing of the maps. In the present case the inspector and the other engineer made out a formal report of the proceedings which took place at the meeting at which the width of the boundary line was fixed and filed it with the department of mines at Harrisburg. While this may have been a very proper thing to do, and doubtless the inspector and engineer thought so, there is no provision in the statute requiring it. The filing of the maps with the owners and the inspector, disclosing the width of the pillar fixed by the inspector and engineers, is required by the statute and no other report of the proceedings before the tribunal seems to be contemplated. The statute may be defective in not requiring a full report of the proceedings to the proper mine authorities of the district or the State, but that is a legislative and not a judicial question, and the failure to make such

a report will not warrant the court in setting aside or annulling the proceedings.

The contention of the appellant that the proceedings are invalidated because Kelshaw, the engineer of the Mill Creek Coal Company, did not sign the report made to the State department of mines cannot be sustained. As already pointed out, no such report is required to be made. The fact that Kelshaw voted in the negative in fixing the width of the barrier pillar does not invalidate the decision of the tribunal created by the act. There is nothing in the statute authorizing the three parties designated by it to fix the width of the pillar which requires a concurrence of all the members in the decision. The members of the tribunal designated by the act were each familiar with the conditions as well as the necessity of a boundary pillar and were, therefore, entirely competent to determine the necessity for and the width of the pillar. If, however, all three of the members of the tribunal were required to join in the decision, the proceedings might frequently be rendered abortive, and the legislative intention defeated. The engineers of the property owners are presumed to exercise their own judgment, uncontrolled by their employers, but if one of the owners should control the action of his engineer, there could be no decision and the statute would be annulled. While we do not by any means concede that the tribunal created by the Act of 1891 is a board of arbitration or its findings an award, yet it has been distinctly ruled by this court that if by clear implication the submission allows a majority of the arbitrators to make an award, they may do so and it will be valid. Here, it is manifest, we think, that considering the legislative intent, the personnel of the tribunal and the purpose for which it was created that it may be fairly implied that while the three members must have an opportunity to participate in determining the question, a majority may make a valid decision.

As suggested above, we do not think it necessary to

consider whether a court of equity has jurisdiction in the present case. It may be that where a bill discloses the misconduct of either or all the members of the tribunal in the performance of their duties, that a chancellor would interfere and protect the injured parties. The question, however, is not before us now and we need not determine it.

The judgment is affirmed.