Feldman *v.* Pictorial Review—Women's World Publishing Company et al., Appellants.

Argued March 9, 1936.

Before Keller, P. J., Cunningham, Baldrige, Parker, James and Rhodes, JJ.

*Frank R. Ambler,* for appellants.

*Sigmund H. Steinberg,* of *Blanc & Steinberg,* with him *Frank H. Gelman,* for appellee.

Opinion by Cunningham, J., July 10, 1936:

While in the course of his employment as a salesman for the defendant publishing company, George Feldman was killed on July 2, 1934, in an automobile accident. His mother, through another son, claimed compensation under Section 307, Subsection 5, of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, (77 PS §561) reading:

"In case of death, compensation shall be computed

on the following basis, and distributed to the following persons:

\* \* \* \* \*

"5. If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, *if dependent to any extent upon the employe* at the time of the accident, twenty-five per centum of the wages, but not in excess of five dollars per week: Provided, however, that in the case of a minor child who has been contributing to his parents, the dependency of said parents shall be presumed: ......" (Italics supplied)

The sole question involved is whether the mother was "dependent to any extent" upon the employe at the time of his death. The referee disallowed the claim, and was affirmed by the board. Upon appeal, however, the common pleas reversed the board, held that partial dependency existed, and entered judgment for claimant at the rate of $5 a week; hence, this appeal by the employer and its insurance carrier from that judgment.

The material and admitted facts are as follows: Claimant had, in addition to deceased, four other children, George being the youngest. He was twenty years old at the time of the accident; she was therefore entitled to his wages while the family relation existed. About sixteen years ago claimant's husband deserted her, but she managed to support the family, with the help of her son Abraham, by peddling. In 1928, however, she was afflicted with a mental disorder, required hospital treatment, and was committed to the Byberry Hospital for Mental and Nervous Diseases in Philadelphia, where she has since remained. During the period of her commitment none of her children has contributed anything to her support, the City of Philadelphia having borne the entire expense of her maintenance at Byberry. The decedent worked for the defendant employer as a solicitor of subscriptions from July, 1933,

until January 1, 1934. In April of the latter year he obtained a temporary job as a printer's apprentice, but resumed work for the company in June of that year.

Certain other facts were also developed at the hearing and are referred to in the briefs, but as they were not made the subject of specific findings by the referee, we shall omit reference to them at this time. In our opinion, no facts other than those recited above are necessary to a decision of the case.

The focal point of the controversy is whether this mother was, within the meaning of the statute, dependent upon her deceased son, although the latter had contributed nothing toward her support and she has, in fact, been a charge upon the city. The court below was of opinion the legal duty of a son to contribute to the support of an indigent mother was sufficient to sustain an award in this case. Our consideration of the question, in the light of the able briefs on both sides, has led us to the same conclusion.

The precise point has not been adjudicated in our appellate courts. We have, however, frequently defined the term "dependent" in its general sense; and we have also been confronted with the cognate problem of the wife who claims as a dependent of her husband, although the latter has not, in fact, made any contributions toward her support. We think a correct application of the fundamental principles announced in those decisions requires an affirmance here.

In the normal and usual instance of a claim by a parent, the child has been contributing toward the support of the household. In such a case, the correctness of the award depends upon the answer to the question thus put in Morris v. Yough Coal & Supply Co., 266 Pa. 216, 109 A. 914: "Were the contributions needed to provide the claimant (recognized as such by the statute) with some of the ordinary necessaries of life suitable for persons in her class and position?" This test

has been consistently applied in subsequent cases. The cases in this class have required a factual determination of the extent and necessity of the contributions. Thus, in Conroy v. Loew's Inc., 102 Pa. Superior Ct. 523, 157 A. 495, and in Franey v. Glen Alden Coal Co., 105 Pa. Superior Ct. 448, 161 A. 433, awards were sustained upon findings by the referee that the deceased child had made contributions to its parents, and that the parents required its aid to supply the ordinary necessities of life. On the other hand, in Corcoran v. Penna. Coal Co., 76 Pa. Superior Ct. 325, dependency was found not to exist where it was not shown that contributions by the deceased child were needed for the support of the parents, and the evidence disclosed they had sufficient income of their own apart from the contributions. Still another situation was presented in Washco v. Wyoming Seminary, 88 Pa. Superior Ct. 470. The evidence there established that the son at the time of his death was working his way through school. By his work he was able to earn enough to pay for his board and tuition. The parents, however, were required to make some payment to defray the expenses of books and clothing. The parents were therefore not only receiving no support from their son, but were actually contributing toward his maintenance. Dependency was therefore not established.

These cases are not authority for the proposition that a parent is not a dependent, within the meaning of the statute, where contributions from the child are needed but not received. They merely decide that where contributions are made the test is whether such contributions were, or were not, needed for support.

Of more direct application are those cases in which a wife made a claim to compensation for the death of her husband. Section 307 of the statute, as amended, (77 PS §562) provides: "No compensation shall be payable under this section to a widow, unless she was

living with her deceased husband at the time of his death, or was then actually dependent upon him for support."

In Creasy v. Phoenix Utilities Co., 276 Pa. 583, 120 A. 659, it was held that a wife was a dependent under this section although her husband failed to contribute anything toward her support or the support of their child for a substantial period prior to his death. It was argued in that case, as here, that dependency does not exist unless the wife was actually in receipt of contributions from her husband. In rejecting this contention, the Supreme Court said (p. 586): "That it was not the intention of the legislature to establish such a harsh rule seems amply proven by the fact that the word 'dependent' was used rather than make the right of the widow depend upon the fact of receiving support at the time of the accident."

The test of dependency was declared to be not the receipt of support, but the acquiescence or non-acquiescence by the wife in the failure of the husband to perform his legal obligations. This case was followed in Shimkus v. Phila. & Reading C. & I. Co., 280 Pa. 88, 124 A. 335, the court saying (p. 91): "Actual dependency may exist though no money has in fact been paid to the wife (Creasy v. Phoenix Utilities Co., supra), and so it should where a wife is really dependent on the husband for support of herself and children, even though default in payment is made by the husband, unless she has acquiesced in the repudiation of the obligation which the law has imposed upon him."

To the same effect is our own case of John v. Susquehanna Collieries Co., 113 Pa. Superior Ct. 493, 173 A. 684.

We see no reason why dependency should be given one construction when applied to the husband-wife relation and another where the parent-child relation is involved. A child is bound by law to support an indigent parent.

Section 1012 of the General Poor Relief Act of May 14, 1925, P. L. 762, 787, enacts: "The husband, wife, children, father, mother, grandparents, and grandchildren respectively of every poor person shall at their own charge, being of sufficient ability, relieve and maintain such poor person at such rate as the court of quarter sessions of the county where such poor person resides shall order and direct."

This provision is merely a reenactment of the previous law upon the subject. Our lower courts have consistently held that a child or parent, as the case may be, is liable to the commonwealth or to the local poor district for the maintenance of the other dependent in a state hospital for the insane. There is of course the initial question of the patient's need of support. There can, however, be no such question in the present case, since it is admitted on both sides that the claimant was maintained, not by her own funds, but exclusively by the city. The necessity for support being conceded, it is immaterial, in view of the ultimate legal obligation on the part of the son, that the city has been defraying the expenses of the claimant in the first instance. This obligation is not affected by the fact that a child fails or refuses to meet it. The present situation is not to be confused with one in which contributions are unnecessary. Indigency being established, and the legal obligation to give support being unquestionable, we are of opinion that the claimant has qualified as a dependent of her deceased son.

Appellants submit that in any event the court below had no power to reverse the findings of the referee and the board, since dependency is a question of fact. It is true that dependency is a factual question in the ordinary case. If the controversy hinged upon a finding that contributions were or were not received, or that the parents did or did not need such contributions to supply them with the ordinary necessities of life, the

findings of the compensation authorities on such issues would be final. Here, however, we have certain basic facts admitted by both parties. Indeed, appellants found their main argument upon the proposition that the claimant had been maintained exclusively by the City of Philadelphia. The real solution of the problem depends on the legal meaning of certain portions of the statute. This makes the question one of law, rather than of fact, and therefore a proper one for decision by the common pleas and review by an appellate court: Carville v. Bornot & Co., 288 Pa. 104, 135 A. 652; Boscola v. Penna. Coal & Coke Co., 90 Pa. Superior Ct. 456.

Reference was made above to certain other evidence not considered necessary to the disposition of this case. It tended to establish that decedent and his brothers and sisters recognized their obligation to claimant and wished to maintain her in a suitable home away from the hospital; that the other children, because of obligations of their own, felt unable to contribute to such a plan; but that the decedent, since obtaining his job, had actually been accumulating a fund for this purpose, which at the time of his death amounted to $190. The briefs discuss whether this was a contribution in fact, and whether an *intention* to contribute is in itself the equivalent of contributions. The referee, however, made no specific findings upon these points; and while the board apparently accepted the evidence as true, it is not conceded by appellants. We therefore do not base any part of our decision upon this testimony, but leave the possible questions involved thereunder for determination in a case where they are properly raised.

Judgment affirmed.