Williams *v.* John B. Kelly Co., Inc., Appellant.

Argued April 12, 1937.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Leonard H. Krieger,* for appellant.

*Stuart A. Culbertson,* for appellee.

OPINION BY JAMES, J., July 15, 1937:

Claimant filed a petition for compensation for the death of her unmarried adult son, John C. Willoughby, who was killed, on November 1, 1935, while in the course of his employment with defendant company. The referee disallowed compensation on the ground that it was not proven that decedent contributed to his mother's support, or that she was dependent to any extent upon him at the time of his death. On appeal, the board set aside the finding of the referee and made an award to claimant, finding as a fact that decedent made various contributions to his mother's support in money, groceries and wearing apparel, and that claimant was partially dependent upon decedent at the time of his death. The court of common pleas affirmed the award of the board and from the judgment entered, this appeal was taken.

The only question before us is whether or not there was any competent evidence to establish dependency of the mother upon the deceased employe.

Section 307, paragraph 7 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 744, as amended by section 2, paragraph 5 of the Act of April 13, 1927, P. L. 186, 191, 77 PS §561, provides as fol-

lows: "If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, if dependent to any extent upon the employe at the time of the accident, twenty-five per centum of wages, but not in excess of five dollars per week."

If the finding of dependency is based on any evidence, or on an inference fairly deducible therefrom, the award must be sustained, though we might differ from the conclusions reached. We cannot substitute our judgment for that of the referee or the board, as the compensation act has delegated to them the exclusive function of determining these facts: *Morris v. Yough Coal & Supply Co.*, 266 Pa. 216, 109 A. 914; *Faucett v. P. R. T. Co.*, 89 Pa. Superior Ct. 449; *Todd et ux. v. Lehigh Valley Coal Co.*, 297 Pa. 302, 146 A. 893; *Kelly et ux. v. Hudson Coal Co.*, 119 Pa. Superior Ct. 405, 179 A. 753. The deceased being of full age, the burden was on claimant to show affirmatively that she was dependent upon him at the time of the accident: *Todd v. Lehigh Valley Coal Co.*, supra. It is true that the term "dependency" contemplates actual dependency, but actual dependency does not mean sole and exclusive support; partial support is within its purview. The act very definitely states "if dependent to any extent." If the contributions made by deceased were required to meet the ordinary necessities of life for a person in the position of claimant, the requirements of the statute were met: *Conroy v. Loew's Inc.*, 102 Pa. Superior Ct. 523, 157 A. 495; *Morris v. Yough Coal & Supply Co.*, supra; *Franey et ux. v. Glen Alden Coal Co.*, 105 Pa. Superior Ct. 448, 161 A. 433; *Zedalis et ux. v. Jeddo-Highland Coal Co.*, 113 Pa. Superior Ct. 49, 172 A. 169; *Ackerson et ux. v. Quereau, Inc.*, 113 Pa. Superior Ct. 52, 172 A. 171.

Claimant, aged 50, lived at the time of the death of her son (aged about 25) at Meadville, Pa. The parents of the deceased employee lived at Titusville, Pa.

for some years, when they moved to Meadville. Five children were born of the marriage and the parents separated and were divorced in 1922. The father remained at Meadville, while the mother moved to Cleveland, Ohio, where she remarried in 1924, separated from her husband in 1932, and returned to Meadville in 1933. While living at Cleveland, the deceased son stayed with her for a time. Upon her return to Meadville, she resided with her daughter, Marguerite Custead, for five months, and with her daughter, Pauline Hulsizer, until October, 1934, when she rented a home, where since she has lived alone, except at various times when the deceased son lived with her. She had been employed off and on at various jobs until August 5, 1935, since which time she has had no employment. During the year 1935, the son worked at various odd jobs until August, when he was employed by an express company for three weeks and, by reason of illness, he lost his job. In September, accompanied by his mother, he went to Cleveland for work. Being unable to find employment, he and his mother returned to Meadville. On October 4, 1935 he went to board with Mrs. Edith Anderholt, and a few days later began to work at the Viscose plant for defendant. Prior to his death, he received one pay which he used to buy wearing apparel.

Claimant testified that her son bought her groceries and gave her money; that while at Cleveland, he paid the rent and bought the groceries; that he had planned on paying her rent and bills from the wages he would receive from his new employment, and later was to come home and they would live together. Claimant's daughter, called by defendant, testified that deceased stayed some time with his mother at Cleveland and also stayed with her; that prior to his employment at the plant, the son stayed with claimant; that the son had given claimant money and had bought her clothing and groceries.

From this testimony, the fact finding authorities were warranted in finding that claimant was partially dependent upon her deceased son. Conceding that the testimony is not very definite as to the amount of contributions, when considered in the light of the general unemployment situation, it presents a picture of conditions that undoubtedly exist in many families and of the necessity of rendering such mutual helpfulness as their stringent circumstances permit. The fact that no contributions were made from the one pay the son received during October, is fully explained by the boarding-house keeper that they were used by him to buy needed shoes and clothing. Such temporary cessation of contributions did not establish that the dependency, which previously existed, had ceased and determined. If claimant was believed, the family relation was to be resumed when the son's financial condition would warrant it.

But aside from the finding of the board that contributions had been made by the deceased son, the testimony would have warranted a finding that the mother was actually in need of support, as she was unemployed and had been subsisting upon the contributions made by the son and the married daughter. Under such proof, whether contributions were in fact made by the son, his legal obligation to maintain and support his mother qualified her as a dependent: *Feldman v. Pub. Co. et al.*, 122 Pa. Superior Ct. 491, 186 A. 308.

Judgment affirmed.