## Smitti et ux., Appellants, *v.* Roth Cadillac Company.

Argued April 14, 1941.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, RHODES and HIRT, JJ.

*Clarence A. Patterson,* for appellant.

*David M. Kaufman,* for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

This is an appeal by the parents of a deceased son from an order of the court below sustaining exceptions to an award of compensation based on partial dependency. The referee who heard the case found as a fact that the appellants were partially dependent upon their deceased son who died as a result of a·compensable accident occurring in the course of his employment with

the appellee. The workmen's compensation board affirmed this finding of the referee and dismissed the appeal. On further appeal to the Court of Common Pleas of Erie County, the court in an opinion by McCRACKEN, P. J., of the 28th Judicial District, specially presiding, reversed the board as to the finding of partial dependency and sustained the defendant's exception to the award, and entered judgment against the defendant for the sum of $150 for funeral expenses only. From this action, an appeal was taken by claimants to this court.

It is not disputed that the deceased son met his death as a result of an accident, for which claimants are entitled to compensation if actually dependent. The sole question before this court is whether the evidence supports the finding by the workmen's compensation board that the appellants were partially dependent upon the deceased son.

The board made, inter alia, the following findings of fact: "In the present case the claimants are the parents of the decedent who was unmarried, twenty-five years of age, and made his home with the claimants until the time of his death. The decedent had been employed for the nine years preceding his death and his father, Romeo Smitti, testified that during this time, the claimant made regular contributions of his entire earnings of $23 per week to the family. The witness, further, testified that he is a tailor by trade and has average weekly earnings of $25 per week; that he owns two homes in the City of Erie, Pa., both of which are subject to a lien of a certain mortgage in the amount of $6,000, held by the Home Owners' Loan Corporation, on which mortgage monthly payments of $65 are required, of which amount the sum of about $25 is in payment of interest. A monthly income of $20 as rental is received from one property. In addition to the decedent, one son, George, who earns between $10 and $15 per week

and two daughters, Rosie, aged 18, and Anna, aged 21, lived at the parents' home. Neither of the daughters is employed. At the time of the decedent's death, the daughter, Rosie, was in business school and monthly payments of $10 were being made for her tuition. Other monthly expenditures were for food, $60 per month; for taxes, $20 per month; for repairs, $10 per month; for car expenses, $5 per month; for clothing, $7 per month; for coal, $4.50 per month; for gas $6 per month; for electric light, $3 per month; for water rent, $2 per month; for painting the home $2 per month; for medical attention $8 per month; thus, the monthly family budget of expenditures amounted to $162.50 which exceeded the father's monthly earnings combined with his income from the rented property and the earnings of the other son which would total $160. The family expenditures above stated did not include recreation, replacement of furniture, insurance, and other necessities and we are of the opinion that the evidence in the case is sufficient to show that the decedent's earnings were needed to supply the claimants with some of the ordinary necessities of life suitable for persons in their class and position, and, therefore, the claimants were dependent to some extent upon the decedent at the time of the accident resulting in decedent's death: *Zedalis v. Jeddo-Highland Coal Co.*, 113 Super. 49."

The court below sustained exceptions to the findings of the board stating, inter alia: "At the time of Victor's death Romeo Smitti, one of the claimants, was employed as a tailor and receiving weekly wages of $30. In addition to the house occupied by his family he owned another for which he received a monthly rental of $20. His son, George, was employed by defendant and was paid $18 per week, and gave all his earnings to claimants. George, at the time of Victor's death, was a minor and has not yet reached his majority. Hence his father was entitled to his wages. From all these

sources, claimants had a monthly income in excess of $212. The monthly expenses are enumerated as follows: Rosie's tuition at Erie Business College, $10; Taxes, $20; Gas, $7; Electricity, $3.50; Coke, $4.50; Groceries, $60; Clothing, $6.25; Interest on Mortgage, $30; Water, $2.50; Automobile, $5; Repairs to house, $10; Painting houses, $5; Medical care, $8. These items of monthly expenditures amounting to $171.75 are the maximum figures given by claimant and disclose that after payment of all monthly expenses he still had a balance of $40.25. If we deduct the full monthly payment on the mortgage ($30 having been allowed for interest), there is still a balance of $2.25."

The difference between the findings of the board and the calculations by the court arises chiefly from taking the earnings of Romeo Smitti, the father, at $30 per week, in lieu of $25 per week as adopted by the board, and those of George, the minor son, at $18 per week, on the theory that at the time of the death of Victor, George was making $18 per week. Appellee also questions any allowance for amortization of the mortgage which required a payment of at least $38 per month. The court below also failed to consider any refund to George, amounting to $3 or $4 per week, out of his earnings, and rejected the finding of the board that George's contribution amounted from $10 to $15 per week.

If the income on the exact day of death be the determining factor in lieu of the average income, then the same rate would, in fairness, apply in considering family expenses. It appears from the testimony, that at the time of death of Victor, appellants were paying $125 per month on the Home Owners' Loan Corporation mortgage and this figure must be accepted as an item of expenses if the reasoning of the court below is followed to its logical conclusion. Appellants contend that in determining the family budget the income over a reason-

able period of time, and the outgo during a similar period of time immediately prior to death should be determined from a consideration of the variable factors which occur during this reasonable period. Any other view would lead to absurd results. For instance, had George not been working during the week that Victor died and he had made no contributions during that period, then his contributions would disappear entirely from the case. Or had it appeared that George had earned $100 during the week immediately preceding the death of Victor, in lieu of his usual $10 or $15 per week, it would certainly not be contended that the item of $100 should determine the basis of contribution of George to the family budget. The mere statement of the proposition shows its own absurdity. We believe that the family budget should be determined much in the same manner as wages are determined, namely, by a consideration of the income and outgo over a reasonable period of time prior to the date of death.

As to the mortgage held by the H. O. L. C., it appears from the testimony of Romeo Smitti, that at the time of Victor's death, he had become in arrears on his payments and for several months, was paying $125 per month, but he could not continue such payment and had not made up the arrearages; that Victor helped him in making these payments; that the corporation had requested him to make larger payments than provided in the original schedule which were about $68 per month. A failure to keep up these payments would necessarily result in a foreclosure of the mortgage which would deprive appellants of a home as also of the income of $20 per month rent.

It also appears that in an effort to enable the daughter to become self-supporting, she was entered in the Erie Business College and in order to secure the payment of the tuition of $10 per month, Romeo and his deceased son had to sign a judgment note calling for the payment

of $10 per month, and that Victor helped in making these payments.

There was no countervailing testimony on behalf of defendant company. We are very much impressed with the candor and apparent honesty of Romeo Smitti in his testimony, as apparently was both the referee and the board.

The accident in question occurred on November 5, 1937, and this case is controlled by the provisions of the Workmen's Compensation Act of 1915. Under that Act, Section 307 (5) provides as follows: "If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, if dependent *to any extent* upon the employe at the time of the accident, twenty-five per centum of wages, but not in excess of five dollars per week: Provided, however, That in the case of a minor child who has been contributing to his parents, the dependency of said parents shall be presumed: And provided further, That if the father or mother was totally dependent upon the deceased employe at the time of the accident, the compensation payable to such father or mother shall be forty-five per centum of wages, but not in excess of ten dollars per week." (77 PS (old volume) 361).

On the issue of actual dependency each case must be controlled by its own circumstances: *Berman v. George J. Blair Co, et al.,* 137 Pa. Superior Ct. 193, 8 A. 2d 731, and in consequence, citations of authority are of little help, but it is equally fundamental that dependency is a question of fact to be determined by the referee and the compensation board, and if such finding is based on any substantial evidence or on an inference fairly deducible therefrom, the award must be sustained even though the court might differ from the conclusion reached. The court is without power to substitute its judgment for that of the compensation authorities: *Todd v. Lehigh Valley Coal Co.,* 297 Pa. 302, 146 A. 893.

We quote from the opinion in *Zedalis v. Jeddo-Highland Coal Co.*, 113 Pa. Superior Ct. 49, 172 A. 169: "The sole question raised by this appeal is whether there is any evidence in the record to sustain the finding of the referee, approved by the Board, that his parents were partially dependent on his earnings. .If there is, we must sustain the award: *Morris v. Yough Coal & Supply Co.*, 266 Pa. 216, 219, 109 A. 914. While the dependency must be actual, and there is no *presumption* of dependency,—as in the case of a minor child contributing to his parents, (Sec. 307, clause 5 of the Workmen's Compensation Act, as amended by Act of June 26, 1919, P. L. 642, p. 648)—yet it need not be 'dependency to a great or considerable degree'—'dependent to any extent upon the employe at the time of the accident,' is the language of the statute. In other words, 'were the contributions of the son needed to provide the claimants with *some* of the ordinary *necessaries* of life *suitable for persons of their class and position?*': *Morris v. Yough Coal & Supply Co.*, supra, p. 220. The word 'necessaries' has no hard and fast meaning. It varies with the accustomed manner of living of the claimants." To same effect see *Williams v. John B. Kelly Co., Inc.*, 128 Pa. Superior Ct. 228, 193 A. 97; *Kelly et ux. v. Hudson Coal Co.*, 119 Pa. Superior Ct. 405, 179 A. 753.

The circumstances, habits and methods of living as they actually existed during the life of the deceased son are factors which must be considered in determining dependency. In short, if the contributions were necessary to maintain the parents in an established, reasonable standard of living, this existing standard must be considered in determining the necessity for such contributions from the son.

In *Zedalis v. Jeddo-Highland Coal Co.*, supra, the parents owned a house subject to a mortgage which was amortized monthly, very much as was the mortgage in the case at bar. Likewise, in *Ackerson v. Clair R.*

*Quereau, Inc.,* 113 Pa. Superior Ct. 52, 172 A. 171, the claimants owned their own home, which was subject to a building and loan mortgage in the amount of $1900, on which payments of $19.50 were made monthly, which payments were recognized as proper items to be included in the family budget.

The language of Judge KELLER (now President Judge) in the case of *Zedalis v. Jeddo-Highland Coal Company,* supra, is peculiarly applicable here: "The five dollars a week which claimants will get under this award is a poor *pecuniary* substitute for the money they received from their son's wages, and will not supply the 'necessaries' he contributed to them."

A careful examination of the record indicates that the award of the board is fully supported by the evidence.

The assignments of error are sustained, the order of the court below is reversed and the record is remitted to the court below with directions to enter judgment on the award.